**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LARRY G. CONN,**

          **Plaintiff,**

                          **Case No. 2:05-CV-699**

     **v.**

                          **JUDGE MICHAEL H. WATSON**

                          **Magistrate Judge Norah McCann King**

**REGINALD WILKINSON, *et al*.,**

          **Defendants.**

**REPORT AND RECOMMENDATION**

This is a civil rights action under 42 U.S.C. §1983 ("Section 1983"), in which plaintiff, an inmate at North Central Correctional Institution ("NCCI") in Marion, Ohio, alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. This matter is before the Court on *Defendants' Motion to Dismiss*, Doc. No. 11, *Defendant Sayers' Motion to Dismiss*, Doc. No. 19, *Motion by the State of Ohio to Dismiss Defendants King and Rosieo* ("*Defendants King and Rosieo's Motion to Dismiss*"), Doc. No. 30, and *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo*, Doc. No. 28.

For the reasons that follow, it is **RECOMMENDED** that *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo* be **DENIED**, that *Defendants King and Rosieo's Motion to Dismiss* and *Defendant Sayer's Motion to Dismiss* be **DENIED** as moot and that *Defendants' Motion to Dismiss* be **GRANTED** in part and **DENIED** in part.

**I. RELEVANT FACTS**

On May 24, 2004, plaintiff underwent a right hip replacement.  *Complaint* ¶ 10.  On June 7, 2004, plaintiff was sentenced to prison and, on June 9, 2004, he was transported to the Correctional Reception Center ("CRC") in Pickaway County, Ohio.  *Id.* ¶¶ 12, 13.  Upon his arrival at CRC, plaintiff was seen by a prison doctor, who advised him to continue his use of a walker and to use a chair in the shower.  *Id.* ¶ 15.  Plaintiff alleges that the reception officers at CRC prohibited him from keeping the walker he had brought with him.  *Id.* ¶ 16.

On June 12, 2004, plaintiff took a shower at CRC but was not provided a chair.  *Id.* ¶ 17.  Plaintiff fell as he left the shower and displaced his new hip.  *Id.* ¶¶ 10, 23.  On June 16, 2004, plaintiff underwent a hip revision.  *Id.* ¶ 25.  Plaintiff alleges that the staff at CRC acted with deliberate indifference to his serious medical needs by prohibiting him from retaining his walker and by failing to provide him with a shower chair.  *Id.* ¶¶ 16, 17, 18.

On June 21, 2004, plaintiff was transported to the Corrections Medical Center ("CMC") in Columbus, Ohio, where he was to stay during his recovery from the hip revision surgery.  *Id.* ¶ 26.  Plaintiff alleges that, while at CMC, his hip wound dressings were not changed for 28 days, resulting in pain and causing the wounds to become infected.  *Id.* ¶ 27.  Plaintiff contends that he sent multiple requests for treatment to a prison doctor, defendant Dr. King, and to CMC's Health Care Administrator, defendant Mrs. Vansky.  *Id.*  On July 2, 2004, Dr. King administered antibiotics for an infection in plaintiff's hip.  *Id.*  ¶ 29.  Plaintiff alleges that Dr. King, Mrs. Vansky and CMC's Institutional Inspector, defendant Mr. Sayer, acted with deliberate indifference to his serious medical needs by failing to timely change his wound dressing.  *Id.* ¶ 27.

On July 19, 2004, plaintiff was discharged from CMC and returned to his parent

institution, NCCI. *Id.* ¶ 31. Once at NCCI, plaintiff requested an egg crate mattress and a remote control for his television set, contending that these items were necessary medical accommodations. *Id.* ¶ 36. Plaintiff was denied both items. *Id.* Plaintiff contends that NCCI's Disability Coordinator, defendant Steven Hartford, NCCI's Medical Supervisor, defendant Mrs. Rosieo, and NCCI's Institutional Inspector, defendant Larry Yoder, all acted with deliberate indifference to his serious medical needs by failing to provide these items to him. *Id.* ¶ 39.

On July 19, 2005, plaintiff initiated this action. Doc. Nos. 1, 3. On September 14, 2005, defendants Wilkinson, Vansky, Hartford and Yoder filed *Defendants' Motion to Dismiss*. Doc. No. 11. On January 20, 2006, plaintiff filed *Plaintiff's Memorandum Contra Defendants Wilkinson, Vansky, Hartford and Yoder's Motion to Dismiss* ("*Plaintiff's Memorandum contra*"). Doc. No. 24. On February 2, 2006, Defendants Wilkinson, Vansky, Hartford and Yoder filed *Defendants' Reply to Plaintiff's Memorandum contra Defendants' Motion to Dismiss*. Doc. No. 25. Plaintiff then filed, twice, *Plaintiff's Reply to Defendants' Reply to Plaintiff's Memorandum Contra to Defendants' Motion to Dismiss*. Doc. Nos. 26, 27.

On November 4, 2005, defendant Sayers filed *Defendant Sayers' Motion to Dismiss*. Doc. No. 19. Plaintiff has not responded to that motion.

On March 31, 2006, plaintiff filed *Plaintiff's Motion for Default Judgment against Defendants King, Sayers and Rosieo*. Doc. No. 28. On April 18, 2006, defendant Sayers filed his opposition to plaintiff's motion. Doc. No. 30.

Also on April 18, 2006, defendants King and Rosieo filed *Defendants King and Rosieo's Motion to Dismiss*. Doc. No. 30. Plaintiff has not responded to that motion.

## II. STANDARDS

**A.     Section 1983**

Plaintiff brings this action under 42 U.S.C. § 1983.  Under that statute, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).   Section 1983 is a method for vindicating federal rights; it is not itself a source of substantive rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**B.     *Pro Se* Litigants**

In this case, plaintiff is proceeding without the assistance of counsel.  A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with the pleading requirements.  *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial."  *Id.* (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).   "Indeed, courts should not assume the role of advocate for the *pro se* litigant."  *Id.* (citing *Hall*, 935 F.2d at 1110).

It is with these standards in mind that the instant motions will be decided.

4

## III.  ANALYSIS

**A.**     **Defendants' Motion to Dismiss**

**1.**     **Standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Defendants move to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint.  *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996);  *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994).  A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Thus, this Court will grant a motion to dismiss under Rule 12(b)(6) if the complaint is without merit because of an absence of facts or law to support the claims in it or if, on the face of the complaint, there is an insurmountable bar to relief.  *See generally, Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

**2.**     **Discussion**

In *Defendants' Motion to Dismiss*, defendants Wilkinson, Vansky, Yoder and Hartford argue that plaintiff failed to exhaust the administrative remedies available to him and that defendants Wilkinson and Vansky were not personally involved in the alleged constitutional

5

violations.[1]   Although the remaining defendants, *i.e.,* defendants King, Rosieo and Sayers, did

not join in this motion to dismiss, the Court will also consider whether the claims asserted

against them have been exhausted.  *See Smith v. Fed. Bureau of Prisons*, 300 F.3d 721, 723 (6th

Cir. 2002) (*sua sponte* review of exhaustion of administrative remedies permitted under 42

U.S.C. § 1997e).

      a.      **Exhaustion of administrative remedies**

      The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner to exhaust

administrative remedies available to the prisoner prior to filing an action relating to prison

conditions in a federal court.  42 U.S.C. §1997e(a) (2004).  The PLRA states in pertinent part as

follows:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

*Id.*   The plaintiff-prisoner bears the burden of proving that a grievance has been fully exhausted.

*Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002).  Although exhaustion is not a jurisdictional

predicate, it is nevertheless mandatory, *Woodford v. Ngo,* __ U.S. __, 126 S.Ct. 2378 (2006),

even if proceeding through the administrative system would appear to the inmate to be "futile."

*Id.,* at 2382; *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).  A prisoner must either

attach "a copy of the applicable administrative dispositions to the complaint or, in the absence of

written documentation, describe with specificity the administrative proceeding and its outcome."

---

      [1]Defendants also address a claim based on the adequacy of the prison grievance system, asserting that it "appears" to them that plaintiff is alleging such a claim.  The Court, however, finds it unnecessary to address this claim because plaintiff asserted no such claim in the *Complaint*.

*Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) ("The reason for the requirement to show with specificity both the claims presented and the fact of exhaustion is so that the district court may intelligently decide if the issues raised can be decided on the merits.").

In addition, grievances filed in an attempt to exhaust administrative remedies must reasonably inform prison officials of the subject of the grievance so that those officials are afforded the opportunity to address the claims before suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Walton v. Bouchard*, 136 Fed. Appx. 846, 849 (6th Cir. 2005). The purpose of the "exhaustion requirement is to provide states the first opportunity to resolve problems themselves." *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

At issue in the case *sub judice* are grievances filed by plaintiff at three institutions, *i.e.*, CRC, CMC and NCCI. Section 5120-9-31 of the Ohio Administrative Code sets forth a three-step grievance procedure for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. Ohio Admin. Code
§ 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. *Id.* § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. *Id.* § 5120-9-31(J)(3).

Additionally, plaintiff brings claims against two institutional inspectors. Prisoner complaints against institutional inspectors and/or wardens must be addressed directly to the

7

Chief Inspector's Office.  *Id.* § 5120-9-31(L).

I.     **Plaintiff failed to exhaust available administrative procedures with regard to his claims against defendants Yoder and Sayers.**

Defendants Yoder and Sayers are both Institutional Inspectors.  *Complaint* ¶ 6.

Complaints against institutional inspectors must be addressed directly to the Chief Inspector's

Office.  Ohio Admin. Code § 5120-9-31(L).  Plaintiff does not allege that he initiated complaints

against these two defendants directly to the Chief Inspector's office nor has he attached

documentation to the *Complaint* showing that he did so.  It therefore appears that plaintiff has

failed to exhaust the available administrative remedies with regard to his claims against

defendants Yoder and Sayers.

Accordingly, even viewing the *Complaint* in the light most favorable to plaintiff, and

accepting all his well-pleaded facts as true, *Scheuer,* 416 U.S. at 236, "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim[s against defendants Yoder and

Sayers] which would entitle him to relief."  *Conley,* 355 U.S. at 45-46.

ii.     **Plaintiff failed to exhaust available administrative procedures with regard to his claims at CRC with regard to Grievance Number 06-05-006 and at CMC with regard to Grievance Number 05-05-004.**

Based on the grievances filed at CRC and CMC, plaintiff names as defendants CMC's

Health Care Administrator, Mrs. Vansky, CMC's staff physician, Dr. King, and CMC's

Institutional Inspector, Mr. Sayers.

On June 13, 2005, plaintiff filed Grievance Number 06-05-006 with the Health Care

Administrator at CRC.  *Exhibit Y* attached to Complaint.[2]  In that grievance, plaintiff complained

that the reception officers at CRC prohibited him from keeping the walker he had brought with

---

[2]All exhibits attached to the *Complaint* will be referred to as "*Exhibit __.*"

9

him, in violation of doctor's orders, and that he was not provided a shower chair, which had also been ordered by a doctor. *Id*. Further, plaintiff complained that, on June 12, 2004, he took a shower without a shower chair and fell as he left the shower, displacing his right hip and necessitating additional surgery. *Id*. Plaintiff initiated a grievance in June 2005, *Id.; Exhibits Z, AA, BB, CC,* but the grievance was denied as untimely. The final step of this grievance was not completed until after the filing of this action. *Decision of the Chief Inspector on a Grievance Appeal* attached to *Plaintiff's Memorandum Contra*.

On May 13, 2005, plaintiff filed Grievance Number 05-05-004 to CMC's Health Care Administrator, defendant Vansky. *Exhibit W*. In that grievance, plaintiff complained of the same incidents about which he complained in Grievance Number 06-05-006 at CRC. Plaintiff proceeded through steps one and two of the administrative process, and at each level the grievance was denied as untimely. *Exhibits W, V, X*. After plaintiff filed this action, he received the *Decision of the Chief Inspector on a Grievance Appeal*, which too denied the grievance as untimely. *Decision of the Chief Inspector on a Grievance Appeal* attached to *Plaintiff's Memorandum Contra*.

Defendants argue that plaintiff failed to exhaust available administrative remedies with respect to these claims because he did not receive the *Decision of the Chief Inspector on a Grievance Appeal* in either grievance until after he had filed this lawsuit. The Court agrees. *See Lutchey v. Wiley*, Case No. 98-3760, 1999 U.S. App. LEXIS 19755 (6th Cir. August 13, 1999) (dismissal of claims appropriate when lawsuit filed "before the chief inspector finished reviewing either grievance," citing 42 U.S.C.A. § 1997e); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (*per curiam*); *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).

10

In addition, however, it is undisputed that plaintiff did not timely file Grievance Numbers 05-05-004 and 06-05-006.  Under the Ohio Administrative Code, plaintiff was required to file the informal complaints "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint."  Ohio Admin. Code § 5120-9-31(J)(1).  The United States Supreme Court very recently addressed the issue of whether an untimely grievance satisfied the exhaustion requirement under the PLRA.  *Woodford v. Ngo, supra*, __ U.S. __, 126 S. Ct. 2378.  In *Woodford*, the prisoner filed a grievance which was rejected as untimely.  The prisoner brought an action in the district court, which dismissed the action for failure to exhaust the administrative remedies because plaintiff had not properly exhausted available administrative remedies, *i.e.*, following the time limits established in the grievance procedure.  The United States Supreme Court concluded:

> This case presents the question whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  We hold that proper exhaustion of administrative remedies is necessary.

*Id.* at 2382.

*Woodford* dictates that plaintiff's claims based on Grievance Numbers 05-05-004 and 06-05-006, which were both filed approximately one year after the incidents about which they complained, must be dismissed for failure to properly exhaust.  Accordingly, even viewing the *Complaint* in the light most favorable to plaintiff, and accepting all his well-pleaded facts as true, *See Scheuer,* 416 U.S. at 236, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" on his claims against defendants Vansky, King and Sayer based on his grievances filed at CRC and CMC.  *See Conley,* 355 U.S. at 45-46.

11

   **iii.**   **Plaintiff exhausted administrative procedures at NCCI with regard to Grievance Number 12-04-004.**

  In the *Complaint*, plaintiff alleges that he suffers pain because of the mattress provided by defendants and because he does not have a remote channel changer for his television. *Id.* ¶ 36. Plaintiff also alleges that he has not been provided rehabilitation for his hip since returning to NCCI. *Id.* However, the grievances filed by plaintiff at NCCI did not include any complaints about rehabilitation; that claim is therefore not properly before this Court. *See Exhibits G, K L, S.* The following explains plaintiff's successful exhaustion of the other two claims.

  Plaintiff alleges that he complained to a doctor at NCCI and to NCCI's Disability Coordinator, defendant Steven Hartford, in approximately September or October 2004, that he needed an egg crate mattress and a remote control for his television. *Complaint* ¶ 35. The NCCI doctor ordered an additional mattress for plaintiff, so that he would have two mattresses on his bed; however, the mattress was taken from him the following day by NCCI personnel because it was considered a security risk. *Id.* ¶ 37. On October 28, 2004, defendant Hartford denied plaintiff's request for a remote control. *Id.* ¶ 43 and *Exhibit A.*

  On November 10, 2004, plaintiff filed an *Informal Complaint*, in which he complained that defendant Hartford denied his request for an egg crate mattress and remote control for his television. *Exhibits G, F.* The *Informal Complaint* was denied. *Exhibit G.*

  On November 24, 2004, plaintiff requested a notification of grievance form and, on December 3, 2004, plaintiff filed the *Notification of Grievance* regarding Hartford's denial of the mattress and remote. *Exhibit K.* On December 6, 2004, the *Notification of Grievance* was denied. *Exhibit L.*

  On December 9, 14 and 22, 2004, plaintiff made written requests for a grievance appeal

12

form in accordance with Ohio Administrative Code §5120-9-31(J)(3). *Exhibits N, O, Q.*
Plaintiff received the grievance appeal form and, on January 22, 2005, plaintiff filed the *Appeal to Chief Inspector*. *Exhibit S.* The *Appeal to Chief Inspector* is stamped by the Chief Inspector's office as received on January 25, 2005. *Id.* Plaintiff alleges, and defendants do not dispute, that no decision was issued on this appeal. Instead, defendants argue that plaintiff failed to exhaust Grievance Number 12-04-004 and that plaintiff failed to show exhaustion by attaching the grievance documents to the Complaint. The Court disagrees.

First, it is not mandatory to attach the applicable administrative dispositions to a complaint. In the "absence of written documentation, [the prisoner need only] describe with specificity the administrative proceeding and its outcome." *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In this case, plaintiff has described with specificity the administrate proceedings and their outcomes. *See Complaint* ¶¶ 41-70 titled "Chronology of Grievance Procedure."

Second, it appears that the Chief Inspector failed to issue a decision on Grievance Number 12-04-004. It is undisputed that the Chief Inspector's office received the appeal on January 25, 2004. *Exhibit S.* The Chief Inspector's decision should have been issued within 30 days of the filing of the appeal, *i.e.,* by February 24, 2004, unless the Chief extended "the time in which to respond for good cause, with notice to the inmate." Ohio Admin. Code § 5120-9-31(J)(3). That did not happen in this case. The United States Court of Appeals for the Sixth Circuit has held that a prisoner's available "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004). Here, defendants failed to timely respond to the *Appeal to the*

*Chief Inspector* in Grievance Number 12-04-004. Thus, plaintiff has demonstrated exhaustion of Grievance Number 12-04-004, wherein he complains that defendant Hartford was deliberately indifferent to his serious medical conditions when he denied plaintiff use of a television remote control and an egg crate mattress.

Accordingly, *Defendants' Motion to Dismiss* plaintiff's claims against defendant Hartford based upon Grievance Number 12-04-004 is without merit.

### b. *Respondeat superior* liability

Defendants argue that ODRC's Director Reginald Wilkinson cannot be held liable in this action because plaintiff failed to allege that defendant Wilkinson was personally involved in any of the alleged constitutional violations. The Court agrees.

This Court has explained:

> The Sixth Circuit has clearly established that a supervisory officer "cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

*Grooms v. Marshall*, 142 F. Supp. 2d 927, 933, 34 (S.D. Ohio 2001).

In the case *sub judice*, plaintiff has alleged neither of these circumstances in the *Complaint*. Indeed, plaintiff makes no allegations whatsoever about Wilkinson in the *Complaint*. Thus the claim against defendant Wilkinson is legally insufficient and *Defendants' Motion to Dismiss* in this regard is meritorious.

### B. Defendants King and Rosieo's Motion to Dismiss and Defendant Sayer's Motion to Dismiss

The Court's conclusion *supra, i.e.,* that plaintiff failed to exhaust available administrative

14

remedies with regard to his claims against defendants King, Rosieo and Sayers, renders moot

*Defendant King and Rosieo's Motion to Dismiss* and *Defendant Sayer's Motion to Dismiss*.

**C.  Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo**

    **1.  Standard under Rule 55 of the Federal Rules of Civil Procedure**

Plaintiff moves for default judgment pursuant to Fed. R. Civ. P. 55, which provides in

relevant part:

> (a) Entry.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> (b) Judgment.  Judgment by default may be entered as follows:

>> (1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

>> (2) By the Court.  In all other cases the party entitled to a judgment by default shall apply to the court therefor . . . .

Fed. R. Civ. P. 55(a), (b)(1), (b)(2).

A motion for default judgment is addressed to the court's discretion, and, the movant is

not entitled to a default judgment as of right, even "when the defendant is technically in default."

10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure §§

2681, 2685.  This Court's "starting point is the general rule that default judgments are ordinarily

disfavored."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (6th Cir. 1986).  "Cases should be

decided upon their merits whenever reasonably possible."  *Id.* (citing *Pena v. Seguros La

Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  "Indeed, [the United States Court of

Appeals for the Sixth Circuit] has indicated a 'strong preference for trials on the merits.'" *United States v. Bridwell's Grocery and Video*, 195 F.3d 819, 820 (6th Cir. 1999) (citing *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986)).

    **2.    Discussion**

    In *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo*, plaintiff argues that he is entitled to default judgment pursuant to Fed. R. Civ. P. 55 based on defendants King, Sayers and Rosieo's untimely responses to the *Complaint*. Plaintiff's argument is not well-taken for several reasons.

    First, an entry of a default is a prerequisite to entry of a default judgment. Fed. R. Civ. P. 55(a); *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983); *see also Ignition Athletic Performance Group, LLC v. Speed City Int'l Corp.*, Case No.1:06-CV-242, 2006 U.S. Dist. LEXIS 43347, *4 (S.D. Ohio June 27, 2006); *Ramada Franchise Svs., Inc. v. Baroda Enter., Inc.*, 220 F.R.D. 303, 305 (N.D. Ohio 2004); *Raimondo v. Village of Armada*, 197 F. Supp.2d 833, 837-38 (E.D. Mich. 2002). No default has been entered in this case because plaintiff did not first file an application with the Clerk for entry of default. Rather, on March 31, 2006, plaintiff filed *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo*. A default judgment cannot be granted until a default is entered by the Clerk. Consequently, plaintiff's default motion fails on this basis alone.

    Second, even if plaintiff had properly filed an application with the Clerk for an entry of default, his application would have been denied because defendants King and Rosieo have not been properly served in this action and defendant Sayer has in fact timely responded to the *Complaint*.

16

The service of process requirements of Fed. R. Civ. P. 4 require a plaintiff to serve a copy of the summons and the complaint on the defendants within 120 days after the complaint is filed. Fed. R .Civ. P. 4(m).  Plaintiff did not properly serve defendants King and Rosieo, as evidenced by the return of the *Summons* as un-executed.  Doc. No. 9.  Because these two defendants were not properly served, no response from them is due.

A summons was re-issued as to defendant Sayers, Doc. No. 12, and this defendant was served with process on October 14, 2005.  Doc. No. 18.  This defendant therefore had 45 days after that date to respond to the *Complaint.  See* Doc. No. 2.  The motion to dismiss filed on behalf of defendant Sayers, Doc. No. 19, was filed on November 4, 2005, well within that time frame.  Fed. R. Civ. P. 55 requires defendants to "plead or otherwise defend" against plaintiff's claims.  Fed. R. Civ. P. 55(a).  "'Plead' means filing an answer; 'otherwise defend' refers to a motion challenging such matters as service, venue, or the sufficiency of a pleading."  *Harrison v Bornn, Bornn & Handy*, 200 F.R.D. 509, 513-14 (D. VI 2001) (citing Wright, Miller & Kane, 10A Federal Practice and Procedure § 2682, at 16-17 (3d ed. 1998)).  In this action, defendant Sayer responded by filing a motion challenging the sufficiency of the *Complaint*.

Accordingly, *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo* is without merit.

It is therefore **RECOMMENDED** that *Plaintiff's Motion for Default Judgment Against Defendants King, Sayers and Rosieo*, Doc. No. 28, be **DENIED**, that *Defendants King and Rosieo's Motion to Dismiss*, Doc. No. 30, and *Defendant Sayer's Motion to Dismiss*, Doc. No. Doc. No. 19, be **DENIED** as moot and that *Defendants' Motion to Dismiss*, Doc. No. 11, be **GRANTED** in part and **DENIED** in part.  Specifically, it is **RECOMMENDED** that

*Defendants' Motion to Dismiss*, Doc. No. 11, be **DENIED** as it relates to plaintiff's claims against defendant Hartford based on Grievance Number 12-04-004 and **GRANTED** with regard to all other claims and defendants.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation*, and the part thereof in question, as well as the basis for the objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Responses to objections must be filed within ten (10) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985);  *Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994);  *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers, AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).


August 8, 2006                                                  s/Norah McCann King
Date                                                                 Norah McCann King
                                                                        United States Magistrate Judge

18